## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| **Douglas A. Kelley,** *in His Capacity as the Court-Appointed Receiver of Thomas Joseph Petters; Petters Company Inc., aka PCI; Petters Group Worldwide LLC; et al.,* | File No. 10-cv-04999 (SRN/HB) |
| **Plaintiff,** | |
| **v.** | |
| **JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., One Equity Partners LLC, Jacques A. Nasser, Lee M. Gardner, Charles F. Auster, James W. Koven, Rick A. Lazio, J. Michael Pocock, William L. Flaherty, Ira H. Parker,** | **MEMORANDUM OPINION AND ORDER** |
| **Defendants.** | |
| **and** | |
| **Ritchie Special Credit Investments, Ltd., Rhone Holdings II, Ltd., Yorkville Investment I, L.L.C., Ritchie Capital Structure Arbitrage Trading, Ltd., Ritchie Capital Management, Ltd., Ritchie Capital Management, L.L.C.,** | |
| **Movants.** | |

Douglas L. Elsass and Lori A. Johnson, Nilan Johnson Lewis PA, 120 South 6th Street, Suite 400, Minneapolis, MN 55402; K. Jon Breyer, Lindquist & Vennum LLP, 80 South 8th Street, Suite 2000, Minneapolis, MN 55402; Kevin M. Magnuson and Steven E. Wolter, Kelley, Wolter & Scott, P.A., 431 South 7th Street, Suite 2530, Minneapolis, MN 55415, for Plaintiff.

John R. McDonald, Benjamin E. Gurstelle, and Kevin M Decker, Briggs & Morgan, PA, 80 South 8th Street, Suite 2200, Minneapolis, MN 55402; Alan Craig Turner, David J. Woll,

Isaac Martin Rethy, Joshua C. Polster, and Thomas Charles Rice, Simpson Thacher & Bartlett LLP, 425 Lexington Ave., New York, NY 10017, for Defendants.

Patrick H. O'Neill, Jr, Larson King, LLP, 30 East 7th Street, Suite 2800, St. Paul, MN 55101, for Movants.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Appeal/Objection ("Objection") [Doc. No. 56] of Movants Ritchie Special Credit Investments, Ltd., Rhone Holdings II, Ltd., Yorkville Investment I, L.L.C., Ritchie Capital Structure Arbitrage Trading, Ltd., Ritchie Capital Management, Ltd., Ritchie Capital Management, L.L.C. (all collectively, "Ritchie") to United States Magistrate Judge Hildy Bowbeer's Order dated January 2, 2018 ("Jan. 2 Order") [Doc. No. 54] denying Ritchie's Motion to Intervene in the present suit. For the reasons stated herein, Ritchie's Objection is overruled.

## I.    BACKGROUND

The facts underlying this lawsuit stem from the well-known Ponzi scheme orchestrated by Minnesota businessman Thomas Petters. *See, e.g.*, *United States v. Petters*, 663 F.3d 375, 380–86 (8th Cir. 2011) (affirming Petters's conviction and 50-year sentence). As the magistrate judge's January 2 Order thoroughly sets forth the facts underlying Ritchie's Motion to Intervene, this Court recites here only the facts necessary to contextualize, and rule on, Ritchie's Objection.[1]

---

[1] This Court cites to several orders issued by other courts of this District for background and because they bear on Ritchie's Motion to Intervene. To avoid confusion, documents filed in this case are referenced as "Doc. Nos.," whereas documents filed in other cases are referenced by their ECF numbers, i.e. "ECF No."

### A. Collapse of Petters's Ponzi Scheme

For nearly twenty years, Petters operated a massive, multi-billion dollar Ponzi scheme through which he defrauded a myriad of investors. *See id.* at 379. This Ponzi scheme collapsed in 2008 after one of Petters's employees contacted law enforcement. *Id.* On September 24, 2008, federal agents raided Petters's offices and subsequently arrested him on October 3, 2008. *See Kelley v. JPMorgan Chase & Co.*, 464 B.R. 854, 856 (D. Minn. 2011). The collapse of Petters's Ponzi scheme has led to a host of litigation, as described below.

### B. Legal Actions Generally

#### 1. The Receivership and Bankruptcy Cases

Immediately before Petters's arrest, the Government commenced a civil action pursuant to the Fraud Injunction Statue, 18 U.S.C. § 1345, to freeze Petters's assets and those of the entities he controlled in order to preserve them for victim restitution and forfeiture were Petters and the entities ultimately convicted in the criminal proceedings. (*See* Compl. Permanent Inj. & Other Equitable Relief, *United States v. Petters*, No. 08-cv-5348 (ADM/TNL) (hereinafter *Receivership Proceedings*) (D. Minn. Oct. 2, 2008), ECF No. 1.) These proceedings are often termed the "Receivership Proceedings" in Petters-related litigation. After first granting an *ex parte* temporary restraining order, on October 6, 2008, the Honorable Ann Montgomery entered a preliminary injunction and later appointed Douglas A. Kelley ("Kelley"), the Plaintiff here, as an equity receiver ("Receiver") for Petters, two of his companies—Petters Company, Inc. ("PCI") and Petters Group Worldwide ("PGW")—as well as several entities owned and controlled by those

3

corporations. (*See* Order Entry Prelim. Inj., Order Appointing Receiver, & Other Equitable Relief, *Receivership Proceedings* (D. Minn. Oct. 6, 2008), ECF No. 12.) After several amendments, Judge Montgomery's order ("Receivership Order") also stayed all litigation against Petters, his corporations, and the Receivership assets, except for claims asserted in the criminal suit or later filed in bankruptcy proceedings. (*See* Second Am. Order Entry Prelim. Inj., Appointment of Receiver, & Other Equitable Relief, *Receivership Proceedings* (D. Minn. Dec. 8, 2008), ECF No. 127.)

Shortly after entry of the Receivership Order—Kelley, in his capacity as Receiver, filed for Chapter 11 bankruptcy for PCI and PGW and their affiliates. *See Kelley*, 464 B.R. at 857. Kelley was then appointed as Chapter 11 Bankruptcy Trustee for the PCI and PGW bankruptcy estates. *Id.* In his capacity as Bankruptcy Trustee, Kelley has filed hundreds of adversary proceedings to try to recover fraudulent transfers and stolen funds. *Id.*

### 2. The Petters Criminal Case

In December of 2009, a jury convicted Petters of 20 counts of fraud, conspiracy, and money laundering, and a court within this district sentenced him to 50 years of incarceration. *See Petters*, 663 F.3d at 380. Petters's sentence also included a personal money judgment in the amount of $3,522,880,614.10. (*See* Sentencing J., *United States v. Petters*, No. 08-cr-364 (RHK/AJB) (D. Minn. Apr. 8, 2010), ECF No. 400 at 6.) The district court declined to order restitution to Petters's victims, however, citing, in part, the extreme difficulty associated with the restitution process in the case and the complexity of the fact-finding that it would require. *See United States v. Petters*, No. 08-cr-364 (RHK/AJB), 2010 WL 2291486, at *5 (D. Minn. June 3, 2010). The court noted that the

Government could proceed through the remission process instead in order to attempt to recompense Petters's fraud victims. *Id.*

### 3. Coordination Agreement Between the Government, Bankruptcy Trustee, and Receiver

In August of 2010, in light of their competing claims to the property associated with Petters's fraud, the Government and Kelley—in his capacities as both Receiver and Bankruptcy Trustee—entered into an agreement to coordinate their efforts (the "Coordination Agreement"). Recognizing that there was a "significant overlap of identity between victims of the fraud and creditors of the PCI Estates and the PGW Estates," the parties sought "to maximize recovery to victims and creditors and minimize receivership and bankruptcy expenses through the coordination of their respective efforts for the victims and creditors." (Coordination Agreement, *Receivership Proceedings* (D. Minn. Aug. 18, 2010), ECF No. 1351-1 at 4.) The parties acknowledged that "competing litigation would result in the overall diminishment of the recovery for victims and creditors alike and undue delay in the distribution of assets." (*Id.*) As such, the Coordination Agreement set forth a comprehensive plan to wind down the assets of the receivership, forgo government forfeiture, and litigate intercompany and third party issues in the bankruptcy proceedings. (*Id.* at 5–12.)

### C. Specific Legal Actions Against Defendants

Before his arrest, Petters had substantial business dealings with the Defendants to the present suit, JPMorgan Chase & Co. ("JPMorgan Chase"), JPMorgan Chase Bank,

N.A. ("JPMorgan Chase Bank"), One Equity Partners LLC, and several individuals[2] involved with these entities (all collectively, "JPMC"). After the collapse of Petters's Ponzi scheme, JPMC has been subject to several different lawsuits in different forums, as described below.

### 1. The Joint Adversary Proceedings in Bankruptcy Court

Kelley, in his capacity as Bankruptcy Trustee for PCI and PGW, along with the trustee of the Polaroid Corporation and the trustee of Petters Capital, LLC, filed three "clawback" cases against JPMC in bankruptcy court in 2010. *See Kelley v. JPMorgan Chase & Co.*, Case Nos. 10-4443, 10-4444, 10-4445 (Bankr. D. Minn.); *See also Kelley*, 464 B.R. at 857.[3] These cases, referred throughout related litigation as the "Joint Adversary Proceedings," seek to recover certain transfers of funds by PCI, PGW, Polaroid and Petters Capital made to or for the benefit of JPMC. *Kelley*, 464 B.R. at 857.  The plaintiffs in the Joint Adversary Proceedings allege that these funds were "derived in whole or in part from proceeds of" Petters's Ponzi scheme. *Id.* In January of 2017, the bankruptcy court denied a motion to dismiss filed by JPMC, and the parties have since been engaged in active discovery. (Decl. Douglas A. Kelley, *Receivership Proceedings* (D. Minn. Aug. 17, 2017), ECF No. 2905 ¶ 4.) As more fully described below, these lawsuits are at the verge of settlement.

---

[2] These individuals are Jacques A. Nasser, Lee M. Gardner, Charles F. Auster, James W. Koven, Rick A. Lazio, J. Michael Pocock, William L. Flaherty, and Ira H. Parker.

[3] Kelley, in his capacity as Bankruptcy Trustee for PGW, also filed a separate adversary proceeding against JPMC, Case No. 10-4446. *See Kelley*, 464 B.R. at 857.

## 2.  Receiver's Civil Suit Against JPMC (This Action)

In December of 2010, Kelley, this time in his capacity as Receiver, initiated the present suit against JPMC, asserting various counts of fraudulent transfers and unjust enrichment. (*See* Compl. [Doc. No. 1].)  The Receiver's Complaint alleges that starting in 2001, Petters held numerous investment accounts at JPMC. (*Id.* ¶ 16.) It further alleges that in 2006, Petters issued a personal guaranty and pledged those investment accounts to JPMC to secure a credit line for PGW. (*Id.*) In this suit, the Receiver seeks to, *inter alia*, recover the approximately $25 million that were held in Petters's investment accounts immediately prior to September 30, 2008—a few days after federal agents raided Petters's offices. (*See id.* ¶¶ 59, 114.) The Receiver alleges that after JPMC learned of the September 24, 2008 raid of Petters's offices, it declared PGW's credit line in default, seized the investment accounts, and began liquidating the assets held in those accounts. (*Id.* ¶ 59.) In so doing, the Receiver claims, "JPMC stepped ahead of the Ponzi scheme's victims and creditors to recover the nearly $20 million that PGW owed under the credit line." (*Id.* ¶ 61.)

Relevant here, in January of 2011, JPMC moved this Court to withdraw the reference to the bankruptcy court of the Joint Adversary Proceedings. *See Kelley*, 464 B.R. at 858. JPMC claimed that Kelley as Receiver for PCI and PGW asserted the same allegations and claims in this civil suit as he asserted in his capacity as Bankruptcy Trustee of the PCI and PGW bankruptcy estates, such that the Joint Adversary Proceedings shared common issues of law and fact with the civil suit, warranting their withdrawal from the bankruptcy court to the district court. *Id.* JPMC argued that withdrawal was necessary in order to maximize efficiencies and avoid potentially inconsistent results given that the Joint

Adversary Proceedings and the civil suit were against the same defendants and "included identical claims and allegations and ar[ose] out of the same set of transactions." *Id.* at 863. JPMC also argued that withdrawal of the reference was necessary to prevent the "manifestly unfair and judicially inefficient result of requiring JPMC to defend against duplicative claims and allegations on competing tracks in separate forums, while its litigation adversaries get two bites at the same apple." *Id.* at 866.

In an order issued in September of 2011, this Court denied JPMC's motion for withdrawal of the reference. *See id.* at 863–67. Of particular importance here, this Court reasoned that the Receiver's suit and the Joint Adversary Proceedings were not "an attempt to get two impermissible bites at the apple, to obtain duplicative recovery, or to otherwise game the system." *Id.* at 867. Rather, this Court explained that Kelley was "attempt[ing] to coordinate the various actions such that the relief obtained in bankruptcy court would dovetail with that obtained [in the civil action]." *Id.* In other words, the various proceedings were fundamentally intertwined, and would not "be proceeding on separate tracks blindly ignorant of each other, such that Kelley would be able to get two bites of the apple." *Id.* This Court concluded by noting that apart from withdrawal of the reference to bankruptcy court of the Joint Adversary Proceedings, there were several mechanisms available to the parties to coordinate the various actions and preclude improper litigation tactics or duplicative recoveries. *Id.* The Court specifically stated that JPMC may, "if necessary, move to stay the present action until the adversary proceedings sort out whatever issues might be of relevance in this . . . action." *Id.*

8

The parties followed this Court's suggestion, and on November 11, 2011, Kelley and JPMC filed a stipulation to stay this action. (*See* Stipulation to Stay Proceedings [Doc. No. 14].) This Court approved the stipulation on December 1, 2011, and the case has been stayed since. (*See* Order Approving Stipulation to Stay Proceedings [Doc. No. 15].) Five years later, on December 1, 2016, the parties filed a renewed stipulation to stay the action "pending the issuance of a final, non-appealable order or judgment resolving all claims in the Joint Adversary Proceedings." (Stipulation to Stay Action [Doc. No. 24] ¶ 1.) This Court approved this stipulation on December 15, 2016, and the case has continued to be stayed. (*See* Order Approving Stipulation to Stay Action [Doc. No. 27].)

On November 16, 2017, counsel for the Receiver filed a letter alerting this Court that the Receiver and JPMC had reached a settlement in principle, and were in the process of executing written settlement agreements. (*See* Nov. 16 Letter to the Magistrate Judge [Doc. No. 49].)  This settlement reaches not only this case, but Kelley's cases against JPMC in bankruptcy court as well. (*See* Jan. 31 Letter to the Magistrate Judge [Doc. No. 62].) On January 31, 2018, and again on April 2, 2018, the Receiver and JPMC filed joint letters apprising this Court that the written settlement agreements were finalized, and that they expected to seek approval of the settlement "shortly" from various courts, including this Court and the bankruptcy court.  (*Id.*; Apr. 2 Letter to the Magistrate Judge [Doc. No. 66].) The parties stated that "[t]his case, as well as the cases now pending before the bankruptcy court in Minnesota, will be dismissed by the parties when final approval is received from all [the relevant courts]." (Apr. 2 Letter to the Magistrate Judge.)

### 3. Richie's Civil Suit Against JPMorgan Chase and JPMorgan Chase Bank

Ritchie is one of the many investors who suffered staggering monetary losses when Petters's Ponzi scheme collapsed. *United States v. Ritchie Special Credit Investments, Ltd.*, 620 F.3d 824, 832 (8th Cir. 2010) (affirming denial of Ritchie's second motion to intervene in Receivership Proceedings). To attempt to recover its losses, Ritchie has been an active participant in Petters-related litigation from the time of Petters's arrest. *See id.* at 826–31. Apart from moving to intervene, unsuccessfully, in the Receivership Proceedings mere days after Judge Montgomery issued the Receivership Order, *see id.* at 829–31, Ritchie has filed a multitude of direct lawsuits against third parties whom it alleges are partially responsible for its losses. These defendants include U.S. Bank, N.A. and General Electric Capital Corp., to name a few. *See, e.g.*, *Ritchie Capital Mgmt., L.L.C. v. U.S. Bank Nat. Ass'n*, No. 15-cv-2092 (DSD/TNL), 2015 WL 4744528 (D. Minn. Aug. 22, 2015) (dismissed because claims were time-barred and for failure to state a claim); *Ritchie Capital Mgmt. v. Gen. Elec. Capital Corp.*, 121 F. Supp. 3d 321 (S.D.N.Y. 2015), *aff'd* 821 F.3d 349 (2d. Cir. 2016).

In February of 2014, Ritchie sued JPMorgan Chase and JPMorgan Chase Bank, among others, asserting several claims that are nearly identical to those brought by the Receiver against JPMC in the instant case. (*See* Second Am. Compl., *Ritchie Capital Mgmt., L.L.C. v. JPMorgan Chase & Co.*, No. 14-cv-04786 (DWF/FLN) (hereinafter *Ritchie v. JPMorgan Chase*) (D. Minn. Aug.18, 2017), ECF No. 164.)  In particular, Ritchie makes claims to the funds that were in Petters's investment accounts at the end of September of 2008, which JPMC liquidated after it learned of the federal raid. (*Id.* ¶¶ 429–

453.) Count 20 of Ritchie's Second Amended Complaint, for instance, is a fraudulent conveyance claim, which, like the Receiver's claims in this case, alleges that "[b]y seizing and liquidating Petters's investment accounts after news of the federal raid, JPMorgan stepped ahead of the fraud scheme's victims and creditors to recover the nearly $20 million that Petters Group Worldwide allegedly owed under the credit line." (*Id.* ¶ 440.)

After the Honorable Donovan Frank referred Ritchie's lawsuit to the bankruptcy court, the defendants in that case moved to dismiss. On August 2, 2017, the Honorable Kathleen Sanberg issued a report and recommendation ("R&R") recommending dismissal of all of Ritchie's claims. (R&R, *Ritchie v. JPMorgan Chase* (D. Minn. Aug. 2, 2017), ECF No. 159.) Ritchie objected, and Judge Frank heard oral argument on Ritchie's objections on September 12, 2017.  (*See* Min. Entry, *Ritchie v. JPMorgan Chase* (D. Minn. Sept. 12, 2017), ECF No. 172.) On December 14, 2017, Judge Frank ruled on Ritchie's objections, and held that all of Ritchie's claims were time-barred by the applicable statute of limitations. (*See* Mem. Opinion & Order, *Ritchie v. JPMorgan Chase* (D. Minn. Sept. 12, 2017), ECF No. 186.) Accordingly, Judge Frank dismissed Ritchie's entire lawsuit with prejudice. *See Ritchie Capital Mgmt., L.L.C. v. JPMorgan Chase & Co.*, No. 14-cv-4786 (DWF/FLN), 2017 WL 6403096, at *9 (D. Minn. Dec. 17, 2017), *appeal docketed*, No. 18-1130 (8th Cir. Jan. 18, 2018). Ritchie, however, is appealing that decision.

### D. Ritchie's Motion to Intervene and the Magistrate Judge's Order

On September 7, 2017—a month after Judge Sanberg recommended dismissal of Ritchie's direct suit against JPMorgan Chase and JPMorgan Chase Bank, five days before oral argument before Judge Frank on Ritchie's objections to Judge Sanberg's R&R, and

nearly seven years after the Receiver initiated the instant lawsuit against JPMC—Ritchie filed the Motion to Intervene in this case. (Mot. Intervene [Doc. No. 28].) Ritchie argues that it is entitled to intervention as a matter of right, or, in the alternative, to permissive intervention, because Kelley, in his capacity as Receiver, is pursuing claims that "belong to Ritchie." (Mem. Supp. Mot. Intervene [Doc. No. 30] at 17.) As described above, Ritchie believes that it has a claim to the funds that were in Petters's investment accounts and which JPMC liquidated after the federal raid. (*Id.* at 19–26.) Thus, Ritchie seeks to intervene in order to challenge the Receiver's standing to assert those very claims against JPMC. (*Id.*) Ritchie contends that "Kelley, in his role as Receiver, lacks standing to pursue claims on behalf of entities who are purported creditors of Petters, when the Receivership entities participated in and benefited from the Ponzi fraud." (Id. at 18.) As such, Ritchie contends, it should be permitted "to intervene in this case to protect [its] interests and demonstrate the Receiver's lack of standing." (*Id.* at 19.)

The Receiver and JPMC oppose Ritchie's Motion to Intervene. Each filed separate briefing, but their opposition is aligned. (*See* Receiver's Mem. Opp'n Mot. Intervene ("Receiver's Opp'n Mot.") [Doc. No. 37]; JPMC's Mem. Opp'n Mot. Intervene ("JPMC's Opp'n Mot.") [Doc. No. 38].) The parties oppose Ritchie's Motion for two primary reasons. First, the Receiver and JPMC argue that Ritchie's Motion should be denied because it is untimely, filed almost seven *years* after the filing of this lawsuit. (Receiver's Opp'n Mot. at 19–22; JPMC's Opp'n Mot. at 11–13.) The parties characterize Ritchie's Motion to Intervene as yet another attempt by Ritchie to circumvent the Receivership Proceedings overseen by Judge Montgomery, as well as the bankruptcy actions, in order to directly

recoup the funds that Ritchie believes it is owed. The parties further argue that Ritchie's interests are not impaired by the Receiver's lawsuit, and that, in any event, Ritchie does not have a cognizable interest in the litigation in light of Judge Sanberg's recommendation that Ritchie's claims against JPMC—paralleling the Receiver's claims in this case—be dismissed.[4] (Receiver's Opp'n Mot. at 22–24; JPMC's Opp'n Mot. at 13–15.)

Magistrate Judge Bowbeer denied Ritchie's Motion to Intervene both under Rule 24(a) (intervention of right) and Rule 24(b) (permissive intervention). (*See* Jan. 2 Order.) First, the magistrate judge found that Ritchie's Motion was untimely, warranting denial. (*Id.* at 11–17.) She reasoned that significant time had elapsed since the case was filed in 2010, that "meaningful progress" had been made in the litigation, and that Ritchie had not proffered any good cause to excuse the delay. (*Id.* at 15.) The magistrate judge found that the Receiver's Complaint was "unambiguous" in its intent to recover from JPMC the funds JPMC obtained from Petters's investment accounts, and that "Ritchie undoubtedly was aware of this litigation based on the efforts it expended in nearly every venue where Petters litigation was being conducted." (*Id.*) With regard to Ritchie's arguments that it must be allowed to intervene to challenge Kelley's standing, the magistrate judge found that "[t]he issue of whether Kelley has standing to sue JPMC to recover those funds, and the importance of that issue to Ritchie, should have been evident to Ritchie from the day it first learned of the complaint in this case." (*Id.* at 16.) The magistrate judge found, instead, "a more plausible explanation for the delay to be that Ritchie has run into dead ends in other

---

[4] Judge Frank had not issued a final order before the magistrate judge held argument on Ritchie's Motion to Intervene.

13

attempts to recoup losses from the Petters Ponzi scheme, and resolved here to make a new run at it by intervening belatedly in the Kelley action against JPMC." (*Id.*)

Second, although she found Ritchie's untimeliness a sufficient reason to deny intervention, the magistrate judge also found that Ritchie's Motion should be denied for the independent reason that Ritchie lacks a legally cognizable interest in the litigation. (*Id.* at 17–19.) After Ritchie's Motion to Intervene was taken under advisement by Judge Bowbeer, but before she issued her January 2 Order, Judge Frank dismissed with prejudice all of Ritchie's claims against JPMorgan Chase and JPMorgan Chase Bank, as described above. (*See* Section I.C.3, *supra*.)   Accordingly, Judge Bowbeer concluded that "[s]ince Ritchie's own case against JPMC has been dismissed, . . . Ritchie does not have an interest in the instant case that is 'direct, substantial, and legally protectable.'" (Jan. 2 Order at 19 (quoting *United States v. Union Elec. Co.*, 64 F.3d 1152, 1161 (8th Cir. 1995)).)

Ritchie timely objected to the magistrate judge's Order. (*See* Ritchie's Obj.) In its Objection, Ritchie renews many of the arguments that it made before the magistrate judge and which she thoroughly considered.  As more fully described below, Ritchie objects to the magistrate judge's conclusion that its Motion to Intervene was untimely, as well as her conclusion that Ritchie lacks an interest in the litigation sufficient to warrant intervention.

## II.   DISCUSSION

A district court's review of a magistrate judge's order on a nondispositive matter, such as the underlying motion, is "extremely deferential." *Reko v. Creative Promotions, Inc.*, 70 F. Supp. 2d 1005, 1007 (D. Minn. 1999); *see also United States v. Raddatz*, 447 U.S. 667, 673 (1980). The Court will reverse such a ruling only if it is clearly erroneous or

contrary to law. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); *see also* D. Minn. LR 72.2(a). "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Smith v. AS Am., Inc.*, 829 F.3d 616, 621 (8th Cir. 2016) (quotations omitted).

### A.  Timeliness of Motion to Intervene

Ritchie first objects to the magistrate judge's conclusion that its Motion was not timely. (*See* Ritchie's Obj. at 17–20.) Intervention as a matter of right and permissive intervention both require that the party seeking intervention file a "timely" motion. *See* Fed. R. Civ. P. 24. The timeliness of a motion to intervene is thus "a threshold issue." *Ritchie*, 620 F.3d at 832. While "[t]imeliness is to be determined from all the circumstances," the Eighth Circuit considers four specific factors when determining whether a motion to intervene is timely: "(1) how far the litigation had progressed at the time of the motion for intervention, (2) the prospective intervenor's prior knowledge of the pending action, (3) the reason for the delay in seeking intervention, and (4) the likelihood of prejudice to the parties in the action." *Id.* (quotations and alterations omitted).

Here, analysis of these factors demonstrates that Ritchie's Motion to Intervene is clearly untimely, and thus that the magistrate judge's Order was not clearly erroneous or contrary to law. Quite the opposite, this Court fully agrees with the magistrate judge's conclusion as to each of the timeliness factors. First, by virtue of Kelley's efforts in bankruptcy court, this litigation had progressed significantly before Ritchie filed its Motion to Intervene. As the magistrate judge correctly found, JPMC and Kelley, albeit in his

capacity as Bankruptcy Trustee, have been engaged in active discovery for a significant length of time. In fact, in a declaration submitted in connection with the Receivership Proceedings, Kelley represented to Judge Montgomery that "[t]he Trustees and the parties to the JP Morgan litigation have been in active discovery[,] . . . [which has] included the production of *hundreds of thousands* of documents, interrogatories, and several depositions." (Decl. Douglas A. Kelley, *Receivership Proceedings* (D. Minn. Aug. 17, 2017), ECF. No. 2905 ¶ 4.)

Ritchie's arguments to the contrary are unpersuasive. Ritchie disagrees with the magistrate judge's conclusion as to the progress of the litigation, contending that her conclusion was erroneously premised on the assumption that "the bankruptcy proceedings are synonymous with this proceeding." (Ritchie's Obj. at 19.) According to Ritchie, "the trustees' progress is not the Receiver's progress." (*Id.*) This Court finds Ritchie's contentions unavailing at best. This Court—more than six years ago—emphasized that much of Kelley's Petters-related litigation—as Receiver and as Bankruptcy Trustee—is inextricably intertwined, hence why the parties stipulated to a stay of the present action in order to allow the Joint Adversary Proceedings to move forward. *Kelley*, 464 B.R. at 866–67. As such, although this particular action has indeed been stayed, the litigation is not "still nascent," as Ritchie argues. (*See* Ritchie Obj. at 19.) Progress is being made in the Joint Adversary Proceedings, which undoubtedly affect this action. In fact, Ritchie's suggestion that "there necessarily has been no progress in this case" is belied by the fact that, as Ritchie readily acknowledges, (*see id.*), the parties *have in fact settled in principle*. This case has actually progressed almost through to completion. This Court, like the magistrate judge,

declines Ritchie's invitation to put the proverbial blinders on and view the Receiver's case against JPMC in isolation. Only by doing so could this Court conclude that this litigation is "in its infancy," as Ritchie argues. (*Id.*) It is not.

The second factor for determining timeliness—the prospective intervenor's prior knowledge of the pending action—likewise weighs strongly against granting Ritchie's Motion to Intervene. This Court agrees with the magistrate judge that Ritchie was undoubtedly aware of the pending action, and all its attendant consequences, years before it sought intervention. The Court need not rehash the myriad of ways Ritchie was put on notice as to the Receiver's claims here. On this point, it suffices to highlight that Ritchie's suit against JPMorgan Chase and JPMorgan Chase Bank—filed in 2014—makes claims that are, almost verbatim, *identical* to those the Receiver included in his Complaint filed in 2010. (*Compare* Second Am. Compl., *Ritchie v. JPMorgan Chase* (D. Minn. Aug.18, 2017), ECF No. 164 ¶¶ 440 ("By seizing and liquidating Petters's investment accounts after news of the federal raid, JPMorgan stepped ahead of the fraud scheme's victims and creditors to recover the nearly $20 million that Petters Group Worldwide allegedly owed under the credit line."), *with* Compl. ¶ 61 ("By seizing and liquidating Petters' investment accounts after news of the federal raid, JPMC stepped ahead of the Ponzi scheme's victims and creditors to recover the nearly $20 million that PGW owed under the credit line.")). It would be difficult to believe that Ritchie was not aware of this litigation since the Receiver filed his Complaint. And in any event, Ritchie does not seem to dispute that he has long been aware of the Receiver's litigation and the Receiver's intent to recover the funds JPMC obtained from Petters's investment accounts and to avoid JPMC's security in those

17

accounts. Rather, as described below, Ritchie's Objection to the magistrate judge's Order is focused on Ritchie's purported reasons for failing to seek intervention, despite its knowledge of the lawsuit, until almost seven years after the Receiver had filed his Complaint.

The third factor—the reason for the delay in seeking intervention—also indicates that Ritchie's Motion to Intervene was properly denied. As the magistrate judge correctly found, Ritchie has failed to show any valid excuse for waiting so long to intervene. Ritchie's two primary arguments for its delay are unavailing. Ritchie first argues that it was not until Kelley as Bankruptcy Trustee argued—in connection with JPMorgan Chase and JPMorgan Chase Bank's motion to dismiss Ritchie's lawsuit then pending before Judge Frank—that "[the Receiver] maintained a financial stake in and had standing to pursue the claims set forth in . . . Counts 20 and 21 [of Ritchie's complaint] solely in his role as the Receiver" that Ritchie first "learned" of the need to intervene in this case. (Ritchie Obj. at 18.) It is difficult to understand how this statement could have provided Ritchie with new information, or information that it did not already have. Kelley's interest and financial stake in the funds at issue in Counts 20 and 21 of Ritchie's complaint is evident from the face of Kelley's Complaint in this case. Kelley has *always* maintained that it seeks to recover the funds that were in Petters's investment accounts. That is, naturally, one of the reasons he filed the suit. And moreover, Ritchie's argument is rendered particularly unpersuasive in light of Judge Montgomery's order in *2015* holding that "[t]he Ritchie Parties' lawsuit against JPMC interferes with the Receiver's action"—this action—"because both seek to recover funds that JPMC seized from Petters' investment accounts on September 30, 2008." (Mem.

Opinion & Order, *Receivership Proceedings* (D. Minn. Sept. 14, 2015), ECF No. 2784 at 13; *see also id.* ("Thus, the Ritchie Parties are seeking to recover for themselves funds from JPMC which are the same funds the Receiver is seeking to recover for the benefit of all victims.").) Plainly, Ritchie cannot claim that it just now learned—or realized—that the Receiver was asserting claims to the funds that were in Petters's JPMC investment accounts.

For similar reasons, this Court finds wholly unpersuasive Ritchie's argument that its motion is somehow timely because, again in a proceeding before Judge Montgomery, Kelley asserted that the issue of his standing to pursue claims against JPMC would have to be decided in the present action. (Ritchie's Obj. at 18.) As Defendants point out, that is an unremarkable statement.  Without question, a party's standing to pursue claims is an issue to be decided in the action where that party is asserting such claims. Again, Ritchie does not in any way explain how Kelley's assertion before Judge Montgomery provided information that Ritchie did not already have. As the magistrate judge correctly noted, any such issues related to the Receiver's standing should have been evident to Ritchie from the day it learned of the Receiver's Complaint. (*See* Jan. 2 Order at 16.) In short, Ritchie offers no credible reasons for its delay in seeking intervention.  This Court is in full agreement with the magistrate judge that a more plausible explanation for Ritchie's delay is that its own claims against JPMC were recommended for dismissal—and have since been actually dismissed as time-barred—and that it viewed intervention in this case as one last opportunity to salvage its claims. (*See id.*) But as the Eighth Circuit has stated, "[w]hen a party had knowledge of all the facts—as Ritchie did—and failed to raise the issue when first

presented with an opportunity to do so, subsequent intervention is untimely." *Ritchie*, 620 F.3d at 833.

Finally, this Court, like the magistrate judge, finds that the final factor—prejudice to the existing parties—weighs against granting intervention. As already described, the parties to this action have engaged in extensive discovery, and, at least as of April 2, 2018, have finalized settlement terms that they intend to present to various courts for approval in the immediate future. (*See* Section I.C.2, *supra*.) As such, the parties clearly would be prejudiced were Ritchie's untimely intervention be permitted, as they would have to, at best, modify their settlement agreement, and, at worst, begin from scratch to accommodate Ritchie, who, significantly, has been deemed by Judge Frank to have no legally-cognizable claims against JPMC. The disruption of hard-fought settlement agreements constitutes prejudice to the existing parties. *See, e.g.*, *United States v. Alisal Water Corp.*, 370 F.3d 915, 922 (9th Cir. 2004) ("In the past, we have affirmed the denial of motions to intervene in cases where granting intervention might have compromised long-litigated settlement agreements or delicate consent decrees.").[5]

In sum, this Court fully agrees with the magistrate judge that Ritchie's Motion is untimely. The magistrate judge properly denied it on this ground.

---

[5] In his Objection, Ritchie makes much of the fact that the parties to this action settled after Ritchie's Motion to Intervene was argued. (*See* Ritchie's Obj. at 15.) According to Ritchie, the parties' settlement "should not be an end around to Ritchie being permitted to intervene." (*Id.*) Ritchie argues that it should be part of the settlement discussions. (*Id.*) The Court first notes that even if the parties had not yet reached a settlement, Ritchie's Motion to Intervene would still be untimely. Second, the Court notes that Ritchie cannot possibly be granted "a seat at the settlement table" when it is not a party to this action and when its *own* claims against JPMC have been dismissed with prejudice.

### B.  Ritchie's Interest in the Litigation

Ritchie also objects to the magistrate judge's conclusion that Ritchie's Motion to Intervene should be denied because Ritchie lacks a legally cognizable interest in this litigation. (Ritchie's Obj. at 20–22.) The magistrate judge observed that "[t]he crux of Ritchie's argument in support of its motion to intervene is that it should be allowed to be heard in Kelley's case against JPMC because success by Kelley in the instant case could prejudice Ritchie's ability to recover against JPMorgan Chase in its own action." (Jan. 2 Order at 19.) However, the magistrate judge concluded that "[s]ince Ritchie's own case against JPMC has been dismissed, . . . Ritchie does not have an interest in the instant case that is 'direct, substantial, and legally protectable.'" (*Id.* (quoting *Union Elec. Co.*, 64 F.3d at 1161).) Ritchie argues that this Court should not give conclusive weight to Judge Frank's order dismissing Ritchie's case because "[Ritchie] has filed an appeal of that Order and therefore it is not a final judgment." (Ritchie's Obj. at 20.)

This Court is unpersuaded. As correctly found by the magistrate judge, Ritchie has been adjudged to have no direct claims against JPMC. Ritchie's claims are time-barred. The fact that Judge Frank's order has been appealed, such that there is but a *possibility* that Ritchie's claims against JPMC could be revived, does not alter the analysis of whether Ritchie *presently* has an interest in this litigation.  *Cf.  Med. Liab. Mut. Ins. Co. v. Alan Curtis LLC*, 485 F.3d 1006, 1008 (8th Cir. 2007) ("An interest that is 'contingent upon the occurrence of a sequence of events before it becomes colorable' is also not sufficient to satisfy Rule 24(a)(2)." (quoting *Standard Heating & Air Conditioning Co. v. City of Minneapolis*, 137 F.3d 567, 571 (8th Cir. 1998))). Allowing Ritchie to intervene after its

own claims have been dismissed would be tantamount to giving him a second opportunity to relitigate his claims in this forum. This Court declines to do so.

## III.   ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT** Ritchie's Appeal/Objection [Doc. No. 56] to Magistrate Judge Bowbeer's Order of January 2, 2018 is **OVERRULED.**


Dated:  April 9, 2018                                  s/Susan Richard Nelson
                                                       SUSAN RICHARD NELSON
                                                       United States District Judge